

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

September 22, 2025

**BY ECF**
The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *United States v. Justin Heath Smith, a/k/a "Austin Wolf,"* **25 Cr. 281 (PAE)**

Dear Judge Engelmayer:

      The Government respectfully submits this letter in advance of the September 29, 2025 sentencing of defendant Justin Smith. For the reasons set forth below, a sentence at the top end of the applicable United States Sentencing Guidelines range is necessary and appropriate in this case.

    **1. The Offense Conduct and Additional Conduct**

      On June 26, 2024, Smith was charged by complaint in this case with child pornography offenses. The Government's investigation continued and, after the defendant's repeated sexual exploitation of children came to light, the defendant ultimately pleaded guilty to an Information charging him with one count of enticement of a minor, in violation of 18 U.S.C. §§ 2422(b) and 2, which carries a 10-year mandatory minimum. The offense conduct arises from a sexual encounter between Smith, an adult coconspirator ("CC-1"), and a 15-year-old minor ("Victim-1"). Additionally, pursuant to a plea agreement, Smith agreed not to contest additional conduct involving his enticement or attempted enticement of minors, production of child pornography, and receipt and distribution of child pornography. Attachment A to the plea agreement, which sets forth the conduct that Smith is not contesting, is attached to this submission.

      Some of Smith's conduct—including the offense conduct to which Smith pleaded guilty— was committed with CC-1, with whom Smith conspired to sexually abuse minors on multiple occasions. On some occasions, Smith organized and hosted (or attempted to organize and host), the sexual exploitation of minors at his apartment and invited CC-1. On at least one occasion, CC-1 organized and hosted the exploitation of Victim-1 at CC-1's apartment and invited Smith.

      **A. Smith and CC-1 Have a Threesome with a 15-Year-Old Minor**

      In late 2023 or early 2024, CC-1 began chatting with a minor ("Victim-1") on Snapchat. CC-1, an adult man, falsely told Victim-1 that he was 17. Victim-1 told CC-1 his correct age:

1

fifteen.[1] Victim-1 and CC-1 exchanged explicit photographs and videos, including videos of Victim-1 masturbating. CC-1 then arranged for him and Smith to meet with Victim-1 in person. (PSR ¶ 22.)

Victim-1 went to CC-1's house, where he met CC-1 and Smith. CC-1 performed oral sex on Victim-1 while Smith masturbated. (PSR ¶ 23; Attachment A ¶ 4.) After the encounter, CC-1 and Smith told Victim-1 not to tell anyone about it. Victim-1 and Smith also communicated directly by Snapchat after the encounter. (PSR ¶ 23.) Victim-1 later reported that he did not remember if Smith touched him.

Snapchat communications between CC-1 and Smith appear to discuss the planned exploitation of Victim-1.[2]

| CC-1: | He's in school rn so maybe later in the day or something |
| --- | --- |
| Smith: | Yes I'm down |
| … | |
| CC-1: | Prob my place again if you're ok with that |
| … | |
| CC-1: | Can I tell him who you are? |
| … | |
| Smith: | [Deleted] |
| Smith: | [Deleted] |
| CC-1: | Yeah that's fine |
| CC-1: | I won't |
| … | |
| Smith: | If he will let u, record me with MY PHONE ONLY |
| … | |
| CC-1: | He's a virgin btw |

---

[1] Victim-1's age was subsequently confirmed in an FBI forensic interview.

[2] These messages do not mention Victim-1 by name, but the date of these messages—October 17, 2024—is consistent with the timeline reported by Victim-1.

2

The conversation continued after the encounter:

| CC-1:  | He just left |
|--------|--------------|
| CC-1:  | we talked about computer stuff, he's a lil nerd |
| CC-1:  | but said he was feeling good and not worried or anything |
| Smith: | He's perfection |
| CC-1   | [devil emoji] |

### B. Smith Tries to Sexually Abuse a Nine-Year-Old Child

In January 2024, another man ("CC-2") told Smith that CC-2 was babysitting a nine-year-old child. CC-2 invited Smith to sexually abuse the child. Smith enthusiastically accepted. (PSR ¶ 12; Attachment A ¶ 5.)

While some of the Telegram chats between Smith and CC-2 were deleted, and others involve coded language, the context of the conversation is clear, including conversations about the age of potential victims:

| CC-2:  | What's the lowest digit you are willing to go? |
|--------|-----------------------------------------------|
| Smith: | I'll travel to any street # |
| CC-2:  | Perfect |
| CC-2:  | Because one of my buds is between 1st and 2nd |
| CC-2:  | Alphabet city |
| Smith: | Cool |
| CC-2:  | So we can go there too |
| CC-2:  | Brutal or gentle? |
| Smith: | Both |
| CC-2:  | Great |
| CC-2:  | Film? |
| Smith: | No |
| CC-2:  | Deal |

The references to "1st and 2nd" and "Alphabet City" appear to be references to the ages of children rather than to streets and neighborhoods. This is evident from the fact that Smith's and

3

CC-2's intended victim did not live in those streets or in that neighborhood. It is also evident from the context of the surrounding conversation: a discussion of Smith's sexual child-sex preferences.

Smith also went to significant lengths to confirm that CC-2 was a real person, including making CC-2 send him a video in which CC-2 says the address of the apartment where the purported minor child was going to be.

The Telegram messages between Smith and CC-2 show the following sequence of events: On January 5, 2024, the defendant got dressed, headed out of his apartment, and walked over to the purported child's building in Manhattan. He updated CC-2 on his location and estimated arrival time. On the way, CC-2 sent Smith his gameplan for what to do at the apartment:

| CC-2: | I'm thinking for a gameplan, we get in, you say hi, turn porn on tv and jo, he will get the hint |
|---|---|
| CC-2: | And try to see what's going on |
| CC-2: | Invite him and go from there |
| CC-2: | He knows my friend is coming |

Smith arrived outside the purported child's building and waited for CC-2 to come down. At the last moment, CC-2 told Smith that the child's parent was coming home sooner than expected and that the encounter would have to be rescheduled. Smith became irate and demanded that CC-2 come down to meet him in person to prove that he is real. CC-2 obliged. The two men met downstairs. Smith was mollified and shared his phone number with CC-2 as a gesture of trust. (They had previously communicated only through Telegram.) The two men stayed in touch for the next few months and discussed a potential make-up date, though none came to pass.

Following the discovery of the communications between Smith and CC-2, an FBI investigation (including an interview of CC-2) revealed that CC-2 did not in fact have access to a child.

### C. Smith Induces a 15-Year-Old Minor to Produce Child Pornography

In February 2024, Smith began chatting with a minor ("Victim-2") on Snapchat and Telegram. The minor told Smith his correct age: fifteen.[3] Smith and the minor then exchanged photographs and engaged in "race play."[4] Among other things, Smith called Victim-2 a "good little nigg**" and Victim-2 referred to Smith as "massa," which means "master." Smith asked Victim-2 to "send me some vids." Victim-2 then sent Smith, among other things, a video showing Victim-2's penis and anus. (PSR ¶ 14; Attachment A ¶ 6.) In a subsequent interview, Victim-2 stated that at least one video was created specifically for Smith at his request.

---

[3] Victim-2's age was subsequently confirmed in an FBI forensic interview.

[4] Smith is white; Victim-2 is African American.

4

### D. Smith Attempts to Meet a Purported 12-Year-Old Minor for Sex

In February 2024, Smith messaged with a Snapchat user who had the term "12M" in his profile, suggesting that he is a 12-year-old male. Smith tried to meet with the minor in Miami, but it does not appear that such a meeting ultimately happened. While the images shared between the two are no longer accessible, the context suggests that Smith sent the child a picture of his penis and that the child sent sexually explicit photos to Smith. (PSR ¶ 17; Attachment A ¶ 7.)

| Smith: | NYC? |
|---|---|
| 12-Year-Old: | no sorry |
| Smith: | Dam |
| Smith: | [Sends image] |
| 12-Year-Old: | fuck ur huge |
| …. | |
| 12-Year-Old: | Do u mind age? |
| Smith: | Are u small? |
| Smith | Love ur age |
| … | |
| 12-Year-Old: | [Sends image] |
| Smith: | Sexy boy |
| … | |
| Smith: | Can I see u? |
| 12-Year-Old: | [Sends image] |
| Smith: | Where are located? |
| Smith: | I travel a lot |
| 12-Year-Old: | fl |
| Smith: | I come to Miami this weekend |
| 12-Year-Old: | oh nice |
| Smith: | Ever sucked a dick? |
| 12-Year-Old: | no |
| Smith: | Want to? |
| Smith: | Are u near Miami? |
| 12-Year-Old: | not really |

### E. Smith Attempts to Meet a Purported 14-Year-Old Minor for Sex

In February 2024, Smith and a purported 14-year-old minor had a lengthy text chat to arrange for the purported minor to come over to Smith's apartment for sex. They discussed modes of transport, a meeting spot, and the sexual acts that the purported minor would perform on Smith. The purported minor mentioned that he had never had sex. The purported minor got cold feet after Smith refused to send him Smith's exact address or a picture of his face, to which Smith responded and "I think u can understand. Ur Yng and I have to be careful" and "Common babes ur 14." (PSR ¶ 15; Attachment A ¶ 8.)

### F. Smith Asks a Purported 14-Year-Old to Send Pictures of His 10-Year-Old Sister

In February 2024, Smith asked a purported minor on Snapchat to send him photos of his 10-year-old sister. (PSR ¶ 15; Attachment A ¶ 8.) Smith later told the purported minor that "[f]ucking a kid is as bad as I get."

| 14-Year-Old: | What age are you into |
|---|---|
| Smith: | Yng |
| Smith: | [Devil Emoji] |
| 14-Year-Old: | I'm 14 :) |
| … | |
| Smith: | Pix? |
| 14-Year-Old: | i don't have any saved and im with my younger sister rn haha |
| Smith: | How old is she? |
| 14-Year-Old: | shes 10 |
| Smith: | Hot |
| Smith: | Send me pix of her |
| … | |
| 14-Year-Old: | do you have any kids? |
| Smith: | No :( |
| 14-Year-Old: | aww theyd be so lucky |
| Smith: | U fuck with ur dad? |
| 14-Year-Old: | Nahh he wouldn't do it I dont think |
| Smith: | Ha |
| 14-Year-Old: | of you had kids would you? |
| 14-Year-Old: | *If |

6

| Smith: | Couldn't say |
| --- | --- |
| 14-Year-Old: | why not |
| Smith: | Would have to have them to know |
| … | |
| 14-Year-Old: | whats ur craziest kink |
| Smith: | This |
| Smith: | lol |
| Smith: | Fucking a kid is as bad as I get |

### G. Smith Has Sex Three Times with an Individual Who Smith Believed to be 15 Years Old

Three times in 2024, Smith had sex with an individual ("Individual-1") who Smith believed to be 15 years old. On the third occasion, Smith invited CC-1 to join in a threesome with Individual-1 at Smith's apartment. Smith recorded the threesome using built-in cameras in his apartment. The video was found in his iPhone camera roll.[5] (PSR ¶ 13; Attachment A ¶ 9.)

While subsequent investigation by the FBI revealed that Individual-1 was in fact an adult, Smith's communications with Individual-1 and three others show that Smith believed Individual-1 to be 15 years old. For example, in an April 2024 message inviting CC-1 to the threesome, Smith wrote:

| Smith: | Hey |
| --- | --- |
| CC-1: | Sup |
| Smith: | I have a boy |
| Smith: | 15 |

In the plea agreement in this case, Smith agreed not to contest that he had believed Individual-1 to be 15 years old. (Attachment A ¶ 9.)

### H. Smith Attempts to Sexually Abuse a Seven-Year-Old Child

In April 2024, Smith chatted with a man who claimed to be a father of a seven-year-old child. The Government has obtained a portion of those communications, which start in the middle of an existing message thread, but the context of those messages indicates that the purported father told Smith that he was visiting New York City with his child and would make his child available

---

[5] Indivicual-2, like Victim-2, is African American. Smith and Individual-2 also engaged in demeaning "race play."

to Smith for sex.  (PSR ¶ 20; Attachment A ¶ 10.)  Smith and the father discussed specific details about the arrangement:

| Smith: | see u next hopefully |
|---|---|
| Smith: | def ok |
| Father: | i can t wait |
| … | |
| Father: | looking for an Airbnb right now |
| Father: | and you got a surprise for him haha he s excited I got the doll for him too |
| Father: | i told him i have a friend who I want him to meet haha |
| Father: | everything is set |
| Father: | i already got our passports |

Around the time of those messages, Smith told several other people that he planned to sexually abuse a seven-year-old child, and suggested he might invite them to join in:

- Smith wrote to one individual: "I may have one for when I get back [from the Caribbean] If ur interested."  When asked for details, Smith responded: "14-7," which equals seven.

- Smith wrote to a second individual:  "I may have 'one' when I get home [from the Caribbean] . . . 21-14."

- Smith wrote a third individual—who was in fact an undercover FBI agent—with an invitation to join the abuse.  Smith used disappearing messages to communicate with this individual, but some of the messages stated: "He's bringing his son" and "trying to make it happen soon."

The FBI executed a search warrant on Smith's apartment on April 21, 2024, before the planned encounter could take place.

A month prior, in an apparently unrelated conversation, Smith told another person on the Session messaging platform that he "def[initely] would" have sex with a seven-year-old child:

| Session User: | We need to try younger though 🍑 |
|---|---|
| Smith: | I want |
| Smith: | But I can't find |
| Session User: | Same man |
| Session User: | We can abroad |

| Session User: | I tried with 7 |
|---|---|
| Smith: | I def would |

### I. The Child Pornography Conduct

Searches of Smith's apartment and devices turned up a large stash of child pornography. All told, 1,291 unique files containing child pornography were found on Smith's devices. Of those, around 75 files showed infants or toddlers, some as young as a few weeks old. Smith sent child pornography to or from at least 15 other people.

These videos are ghastly. Two are described below:

- A video titled "sdpa_gay_niño_de_10_años_atado_y_violado_por_ adulto2_1.mp4" (which translates, in substance and part, to "sdpa_gay_10-year-old_boy_tied_and_raped_by_adult2_1.mp4") is approximately 2 minutes in length. It depicts a male child of approximately 10 years old bent over a chair. The child is shirtless. An adult man ties the child's hands behind the child's back. The man walks in front of the bent-over child and rubs his groin in the child's face. The man unzips his pants and puts his erect penis in the child's mouth. When the child stops engaging the man in oral sex, the man whips the child with his belt. The man continually pulls the child's mouth on the man's erect penis.

- An untitled video, approximately 3 minutes and 27 seconds in length, depicts a shirtless child of approximately 8 months old laying on their back on a bed. An adult man, nude from the waist down, kneels over the child and holds the child down with one hand while using his other hand to force his erect penis into the child's mouth. The man masturbates into the child's mouth and places his hands on the back of the child's head, repeatedly and violently forcing his erect penis into the child's mouth. The video then cuts to another scene in which the same man is shown forcefully and repeatedly shoving his erect penis into the child's mouth while holding the back of the child's neck and head.

### 2. The Plea and Guidelines Calculation

Smith was initially charged by Complaint with two counts of (i) receipt and distribution of child pornography (Count One) and (ii) possession of child pornography (Count Two). On June 20, 2025, pursuant to a plea agreement, Smith pleaded guilty to Count One of the Information, which charges him with enticement of a minor in violation of 18 U.S.C. §§ 2422(b) and 2, and which carries a 10-year mandatory minimum. In the plea agreement, the parties stipulated to a Guidelines range of 188 to 235 months' imprisonment, and the defendant agreed not to contest certain additional conduct, as described above. The Probation Office calculated the same applicable Guidelines range of 188 to 235 months' imprisonment. (PSR ¶ 104.)

3. **Applicable Law**

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Guidelines are not mandatory; however, it also held that a district court must "consult" the Guidelines and "take them into account" when fashioning a sentence. *Id.* at 264. As the Supreme Court has explained, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, a court must proceed to consider seven factors outlined in 18 U.S.C. § 3553(a): (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1); (ii) the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); (iii) "the kinds of sentences available," *id.* § 3553(a)(3); (iv) the Guidelines range itself, *see id.* § 3553(a)(4); (v) any relevant policy statement by the United States Sentencing Commission, *see id.* § 3553(a)(5); (vi) "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and (vii) "the need to provide restitution to any victims," *id.* § 3553(a)(7).

The statute directs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, pursuant to which the sentence needs:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id.* § 3553(a)(2).

While a district court may not presume that an appropriate sentence lies within the Guidelines range, "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6. The relevance of the Guidelines throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita*, 551 U.S. at 349. To the extent a district court varies from a Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

**4. A Sentence of 235 Months' Imprisonment is Necessary and Appropriate**

Smith's depravity is hard to fathom. Again and again, he gleefully preyed on young children. His extensive messages reveal no compunctions and no limits. All that mattered was his own gratification. Only a lengthy term of imprisonment—at the top end of the Guidelines—can punish this ghastly conduct, protect the community, deter Smith from future crimes, and send a clear message to other would-be offenders.

The seriousness of Smith's crimes cannot be overstated. He actively tried to rape defenseless seven- and nine-year-old children. He had sex three times with someone who he believed to be 15 years old. He collaborated in at least one in-person sexual encounter with a 15-year-old. He induced another 15-year-old to create child pornography for him. And his desire for more abuse—and for younger children—was even greater. On top of that, he possessed and shared vast amounts of child pornography, including videos showing the violent rape of young children.

All of the factors set forth in 18 U.S.C. §§ 3553(a) cry out for a significant sentence. The nature and circumstances of the conduct are reprehensible. It is also the type of conduct that the defendant could easily resume upon release—all he would need is a cellphone. The characteristics of the defendant, including his gleeful demeanor when he committed these crimes—further demonstrate the need for punishment and incapacitation. There is also a significant need for individual and general deterrence in light of his repeated, callous sexual exploitation of children. Smith is a high-profile actor in the adult film industry. He used that role to enable his conduct.[6] Men like CC-1 and CC-2 were drawn to Smith because of his celebrity status. So were some of his victims. Only a significant sentence will make it clear to him that future sex offenses will come at a significant cost.

Crucially, Smith's conduct catalogued in the plea agreement reflects only a small snapshot in time. Smith's phone—the primary source of evidence—contained communications only from late 2023 to April 2024 (a roughly six month period) possibly due to Smith having gotten a new phone sometime in late 2023. But given the frequency and severity of the conduct in those few months, there is every reason to believe that the defendant had engaged in similar conduct before: sharing and receiving child pornography, enticing minors to create child pornography, and hands-on abuse and rape of children.

Smith's letter to the Court claims that his conduct was triggered by an event that occurred in the summer of 2023. To the extent this implies that Smith did not engage in such conduct beforehand, that is inconsistent with the evidence and appears to be an attempt to minimize his sustained sexual exploitation of children. First, in January 2024, CC-2 asked Smith, "when was your last?" Smith replied, "Over a year." (CC-2 followed up with "Single or double digits?" but a piece of the ensuing conversation is missing, suggesting that it may have taken place over

---

[6] Smith also intentionally produced content with underage-looking actors. For example, in 2022, he posted an Instagram video showing him leading a boy wearing a backpack into his building to the sound of Mariah Carey's "All I Want for Christmas is You." *See* https://www.instagram.com/reel/CkgfOy6LXmj/?hl=en. The Government has no knowledge of the age of the actor, but the intended effect of the video could not be clearer. As of the date of this letter, the video has over 20,000 "likes."

11

disappearing messages.)  Second, the child pornography found on the defendant's devices have creation dates older than the summer of 2023, including as far back as 2022.  And third,



Simply put, any claim that Smith's conduct conveniently began only in late 2023 is not credible.[8]  Thus, while this is indeed Smith's first brush with the criminal justice system, there is every reason to believe that his pattern of conduct is longstanding.

[9]

   In sum, Smith presents a danger to children everywhere.  Only a significant term of imprisonment can protect the community, afford adequate punishment for his crimes, and deter Smith and others from engaging in sexual abuse and exploitation of children.

### 5. A Within-Guidelines Fine is Necessary and Appropriate

   Pursuant to U.S.S.G. §5E1.2(a), the court "shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine."  At the time of his arrest, Smith was making around $1.2 million per year.  (PSR ¶ 98.)  Yet, as noted in the PSR, Smith has failed to provide any financial documents regarding his ability to pay a fine.  (PSR ¶ 102.)  The Government respectfully requests that the Court inquire into the

---

[7] 

[8]

[9] The Government is redacting the portions of this submission that respond to redacted portions of the defendant's submission in according with Individual Rule 7(E)(i).  Unredacted versions will be submitted to the Court and defense counsel.

defendant's financial status and impose an appropriate fine within the Guidelines range of $40,000 to $250,000 in addition to the $5,000 and $100 special assessments applicable in this case.[10]

### 6. Conclusion

For the foregoing reasons, the Government respectfully requests that the Court impose a sentence at the top of the stipulated Guidelines range and a within-Guidelines fine.[11]

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: /s/ Getzel Berger
Getzel Berger
Assistant United States Attorney
(212) 637-1061

cc:   Defense Counsel (by ECF)

---

[10] The Government has received several restitution requests to date from child-pornography victims (which it has shared with defense counsel) and respectfully requests 90 days to submit a proposed restitution order, in order to allow additional victims, if any, to send restitution requests.

[11] In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release that the Court intends to impose, the Court briefly state its reasons for concluding that each such special condition is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b). *See, e.g.*, *United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same); *United States v. Jimenez*, No. 22-1022, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) (summary order) (same).

## ATTACHMENT A

**Messaging Accounts**

1. The defendant was the sole user of the "Anon Anon" Telegram account during the period between on or about January 1, 2024 and April 21, 2024.

2. The defendant was the sole user of the "Anonmuscel" Snapchat account, which had the display name "Muscle NYC Into Yng: Tele?," during the period between on or about January 1, 2024 and April 21, 2024.

3. The defendant was the sole user of the "Anonmuscle" Session account during the period between on or about January 1, 2024 and April 21, 2024.

**Enticement or Attempted Enticement of Minors and Production or Attempted Production of Child Pornography**

4. In or about late 2023, the defendant visited the apartment of another adult man ("Male-1") and watched Male-1 perform oral sex on a 15-year-old minor while the defendant masturbated.

5. In or about January 2024, the defendant communicated with a Telegram user (the "Sitter"). The Sitter claimed to the defendant on Telegram that the Sitter was babysitting a purported nine-year-old minor and invited the defendant to an address in Manhattan where the defendant and the Sitter could sexually abuse the purported minor. On or about January 5, 2024, the defendant went to the above-mentioned address and met with the Sitter outside the building or in the lobby of the building, but the planned encounter was aborted after the Sitter told the defendant that the purported minor's parent would be coming home sooner than expected. The defendant and the Sitter remained in contact through in or about April 2024 to arrange a potential encounter with the purported nine-year-old minor.

6. On or about February 13, 2024, the defendant communicated with a 15-year-old minor on Snapchat and Telegram. After the minor told the defendant that the minor was 15 years old, the defendant asked the minor for sexually explicit photos or videos. The minor then sent the defendant, among other things, a video showing the minor's penis and anus.

7. On or about February 20, 2024, the defendant communicated with a Snapchat user whose username contained the phrase "12M," suggesting that the user was a 12-year-old male. In the messaging thread, the defendant and the purported minor appear to exchange sexual photographs and discuss a possible meeting location.

8. On or about February 20, 2024, the defendant communicated with a Snapchat user who stated that he was 14 years old. The defendant and the purported minor exchanged photographs and discussed meeting up that night at the defendant's apartment for sex. The defendant and the purported minor discussed the specific sex act that the purported minor would perform on the defendant, and the defendant

2025.03.12

provided his cross-streets so that the purported minor could travel to the defendant's apartment. The planned encounter did not ultimately occur.

9. On or about February 7, March 13, and April 10, 2024, the defendant had sex with an individual ("Individual-1") who claimed to be 15 years old but who was in fact an adult. The defendant believed that Individual-1 was 15 years old, as reflected in the defendant's messages with Individual-1 and in the defendant's messages with three other individuals in which the defendant described Individual-1. During the April 10, 2024 encounter, the defendant invited Male-1 for a threesome with the defendant and Individual-1. The defendant recorded the encounter and saved the video in his iPhone camera roll.

10. In or about April 2024, the defendant communicated on Telegram with an individual who claimed to be the father of a seven-year-old child and who offered to make the child available to the defendant for sexual abuse during a visit to New York City between on or about April 21 and April 29, 2024. The defendant believed that the purported child was seven years old, as reflected in the defendant's messages inviting two different individuals to join him in sexually abusing the minor and in messages sent to an FBI undercover employee. Federal law enforcement executed a search warrant on the defendant's residence on or about April 21, 2024, before the planned encounter could occur.

**Receipt and Distribution of Child Pornography**

11. Between on or about March 24, 2024 and March 28, 2024, the defendant and another individual exchanged approximately 200 videos and photographs containing child pornography, as alleged in the Criminal Complaint in 24 Mag. 2422.

2025.03.12